INTOXICATING LIQUORS
A non-resident seller licensed by the Alcoholic Beverage Control Board must sell its product to all licensed Class B wholesalers in this State whether its product is destined solely for sale to military installations within the boundaries of the State of Oklahoma or not. Further, in accord, the Alcoholic Beverage Control Board must enforce 37 O.S. 533 [37-533] (1971) as it relates to any such non-resident sellers. The Attorney General has considered your request for an opinion wherein you ask the following question: "Whether or not the Alcoholic Beverage Control Board or its Director may lawfully enforce 37 O.S. 533 [37-533] against a non-resident brewer when that brewer is selling strong beer to resident Class B wholesalers and when such 'strong beer' is destined solely for sale to military installations with (sic) the State of Oklahoma." The applicable statutory provision about which you inquire, 37 O.S. 533 [37-533] (1971), provides as follows: "Any manufacturer or subsidiary of a manufacturer who markets his or its products solely through a subsidiary or subsidiaries, a distiller, rectifier, bottler, wine maker, brewer, or importer of alcoholic beverages, bottled or made in a foreign country, either within or without this State, shall be required to sell such brands or kinds of alcoholic beverages to every licensed wholesaler or Class B wholesaler who desires to purchase the same, on the same price basis and without discrimination or inducements, and shall further be required to sell such beverages only to those persons licensed as wholesalers or Class B wholesalers. "No manufacturer shall require a wholesaler or Class B wholesaler to purchase any alcoholic beverages or any goods, wares or merchandise as a condition to the wholesaler or Class B wholesaler obtaining or being entitled to purchase any alcoholic beverages. "Violation of this Section shall be a misdemeanor. Conviction hereunder shall automatically revoke the violator's license." The aforementioned statutory provision was enacted by the Legislature in 1959 to effectuate the express language of Article XXVII, Section 3 of the Oklahoma Constitution which prohibits such discrimination. In State ex rel. Hart v. Parham, 412 P.2d 142 (Okl. 1966) the Supreme Court of this State, in considering the above-cited statutory and constitutional provisions concluded their purpose to be as follows: "Upon examination of the Act as a whole, we think that it clearly expresses an intent on the part of the Legislature that, within the framework of strict regulation which the liquor industry by its nature requires, the commercial aspects of the industry shall be operated under the conditions of free and unrestricted competition. The Act is replete with provisions directed to this objective. "The legislative purpose, as seen above, was to provide for unrestricted commercial competition. Unilateral action either by the manufacturers or by the wholesalers to establish a franchise system thwarts this objective . . ." If the Alcoholic Beverage Control Board may lawfully enforce the aforementioned provisions, 37 O.S. 514 [37-514] (1971) expressly charges the Board with such duty. It is with this in mind, and to that end that your question must be addressed. This office is cognizant of the several United States Supreme Court opinions wherein attempts by states to regulate by licensing, taxing, or otherwise, the importation of distilled spirits into military enclaves were found to be impermissible. See United States v. State Tax Commission of Mississippi, et al., 421 U.S. 599,44 L.Ed.2d 404, 95 S.Ct. 1872 (1975); United States v. State Tax Commission of Mississippi, et al., 412 U.S. 363,37 L.Ed.2d 1, 93 S.Ct. 2183 (1973); Johnson v. Yellow Cab Transit Company, 321 U.S. 383, 88 L.Ed. 814, 64 S.Ct. 622
(1944); Collins v. Yosemite Park Curry Company, 304 U.S. 518,82 L.Ed. 1502, 58 S.Ct. 1009 (1938). However, those cases do not address themselves to the issues confronted by your question. The enforcement of 37 O.S. 533 [37-533] (1971) affects the sale by a non-resident seller, who is licensed as such by the Alcoholic Beverage Control Board pursuant to 37 O.S. 524 [37-524] (1971) to Class B wholesalers licensed by the Alcoholic Beverage Control Board pursuant to 37 O.S. 521 [37-521] (1971). It is this transaction about which we are herein concerned. The statutory provision considered herein in no way affects, regulates, or otherwise burdens the absolute freedom of all military enclaves in the State of Oklahoma to purchase or otherwise import into this State alcoholic beverages for use and consumption on said military enclaves. On the contrary, 37 O.S. 533 [37-533] (1971) merely affects the sale from such non-resident seller to Class B wholesalers in this State. The statutory provision merely requires that if a non-resident seller desires to sell and market its product to a Class B wholesaler in this State, then it must sell such product to all Class B wholesalers so licensed herein, without discrimination. The provision in no way affects the right of a military enclave to import into this State alcoholic beverages of any nature whatsoever. Furthermore, enforcement of 37 O.S. 533 [37-533] (1971), as to the said non-resident sellers, would actually be of great beneficial effect to all military personnel stationed at such enclaves in this State. They will be permitted to enjoy the benefits of free and open competition among wholesalers just as the residents and citizens of this State enjoy. It is, therefore, the opinion of the Attorney General that your question be answered as follows: A non-resident seller licensed by the Alcoholic Beverage Control Board must sell its product to all licensed Class B wholesalers in this State whether its product is destined solely for sale to military installations within the boundaries of the State of Oklahoma or not. Further, in accord, the Alcoholic Beverage Control Board must enforce 37 O.S. 533 [37-533] (1971) as it relates to any such non-resident sellers. (KENNETH L. DELASHAW, JR.)